IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARILYN S. BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07CV895-SRW |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Marilyn S. Byrd brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On May 5, 2005, plaintiff filed an application for Supplemental Security Income (SSI). On April 17, 2007, after the claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. The ALJ rendered a decision on May 18, 2007, in which he found that plaintiff suffered from the severe impairments of "chronic obstructive pulmonary disease, hypertension, cervical radiculopathy, left shoulder impingement with possible underlying rotator cuff tear, peripheral neuropathy, iron deficiency anemia, [and]

renal artery stenosis status post angioplasty." (R. 15).  He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy.  Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.  On August 3, 2007, the Appeals Council denied plaintiff's request for review.

### STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

### DISCUSSION

A person is entitled to Social Security disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).[1]

> An individual who files an application for Social Security disability benefits must prove that she is disabled. The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. At the first step, the claimant must prove that she has not engaged in substantial gainful activity. At the second step, she must prove that she has a severe impairment or combination of impairments. If, at the third step, she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience. If she cannot prevail at the third step, she must proceed to the fourth step where she must prove that she is unable to perform her past relevant work. At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform. If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.

Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999)(citations omitted).

The plaintiff argues that, while her impairments are not of listing-level severity, the ALJ erred in reaching his Step 5 decision by: (1) finding her testimony to be only partially credible; (2) giving "a lot of weight" to the opinion of the state agency medical consultant; and (3) basing his finding regarding other work plaintiff can perform on the hypothetical

---

[1] In Barnhart v. Walton, 535 U.S. 212 (2002), the Supreme Court upheld the Commissioner's interpretation of the statute that the inability to work – not just the impairment – must last twelve months.

question he presented to the vocational expert rather than the hypothetical question posed by plaintiff's counsel to the VE.

### The Credibility Determination

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[2] "The credibility determination does not need

---

[2] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on

to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

At the hearing before the ALJ, plaintiff testified that she is unable to work because she has "a lot of problems" with her legs and can "hardly stay up on them at times," and she has high blood pressure and problems sleeping, COPD, and anemia. (R. 299). Plaintiff testified that she has pain every day at a level of 8 on a scale of 10 in her back and legs, and that her legs go numb. She testified that she gets "slight" relief from her pain medication and has no side effects. (R. 300-01). Plaintiff further stated that she is able to walk "about two or three minutes" before she must sit down due to pain, that she is able to stand "[j]ust about a minute" and that she can sit for thirty minutes. She indicated that she can lift "[p]robably about five pounds." (R. 302-03). Plaintiff testified that she takes medications for stomach and intestinal ulcers, and that when she eats, her stomach hurts. (R. 304-05).[3]

---

an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

[3] Although she initially testified that she suffers no side effects from her medication, plaintiff testified – on leading examination by her counsel – as follows:

Q. And when the judge asked you if these medications create any problem, are you on a medication for stomach and intestine ulcers?

A. Yes, I am.

The ALJ found plaintiff's statements regarding her symptoms to be only partially credible.  He noted that "[t]he objective medical evidence including x-rays, pulmonary function studies and physical exam findings, indicates only mild abnormality[.]" (R. 18). Although plaintiff attributes her inability to work in part on her COPD, the ALJ noted that a pulmonary function test conducted in August 2005 revealed only mild restrictive pulmonary disease. (R. 15) . Dr. Vijay Vyas reported, "The FVC is minimally decreased. The <u>FEV @ 1-second</u> is mildly decreased.  The Ratio of FEV/VC is normal."  He stated, "The patient has Mild Restrictive Pulmonary Disease." (R. 221).

Plaintiff complained to her physicians of abdominal pain in February 2005.  (R. 143, 167, 246).  Although plaintiff has been diagnosed with gastritis (R. 244) and complains of stomach pain, the ALJ observed that a February 2005 upper GI series was normal. (R. 16;

---

Q.  And has anybody explained to you [INAUDIBLE] if you're taking like 13 different medications –

A.  Yeah.

Q. – that that is what's creating –

A.  Um-hum.

Q.  – that problem?

A.  Yeah.

(R. 304-05).  Plaintiff does not identify any evidence of record that she has complained of side effects of medication to her treating physicians, and the court has found no such evidence.  As the Commissioner notes, plaintiff has expressly indicated to her physician that she has only minimal side effects from medication. (<u>See</u> R. 164, 180-81).  On this record, the ALJ was not required to credit plaintiff's testimony of side effects from medication.  <u>See</u> <u>Turner v. Commissioner of Social Security</u>, 182 Fed. Appx. 946, 949 (11th Cir. 2006)(unpublished opinion) ("[T]he ALJ did not err in discrediting Turner's testimony regarding side-effects from her medications because the record includes no evidence that Turner consistently complained to her doctors of any side-effects.")

see R. 166 ("The esophagus, stomach and duodenum were studied . . . . Normal mucosa and peristalsis are noted throughout and there are no filling defects.  There is no evidence of peptic ulcer disease.  The duodenal sweep and proximal jejunum are normal.  Impression: Normal upper GI series.")).  An abdominal ultrasound in March 2005 revealed only "mild splenic prominence" and a small cyst in the left kidney, but no other significant findings.  (R. 152).  Plaintiff reported on March 24, 2005 that her stomach was better, and on April 27, 2005 that she had "no stomach problems now[.]"   (R.  242-45).

In an office visit in August 2004, plaintiff complained of intense back pain.  Her physician, Dr. Roberts, noted "back spasm with swelling in the low back," inflamed and swollen paravertebral muscles, and neuropathy with leg pain and spasm in the legs." (R. 177-78).  However, in January 2005 – plaintiff's next visit to Dr. Roberts – the treatment notes indicate that "[t]he patient has no paravertebral muscle tenderness, myositis, and loss of range of motion, or muscle tenderness, kyphosis, scoliosis."  Dr. Roberts noted "no pain on range of motion testing" and "[n]erve sensation is intact on exam." (R. 171-72).  In February 2005, Dr. Roberts' examination revealed no musculoskeletal or neurological abnormalities.  (R. 168).  In May 2005, plaintiff complained to Dr. Roberts of pain in her right elbow and hand.  Dr. Roberts noted pain, swelling and spasm on examination and diagnosed arthritis, but x-rays of plaintiff's right elbow, hand and forearm were all normal. (R. 158-65).   In June 2006, a radiologist identified no abnormalities in plaintiff's lumbar spine x-ray.  (R. 274).

In January 2007, plaintiff sought treatment from Dr. Fleming Brooks, an orthopedic

specialist, for left shoulder and neck pain.  Dr. Brooks noted 5/5 strength in all muscle groups and that plaintiff had a normal gait. She had pain with cervical spine flexion and her shoulder was tender "in the subacromial space."  Dr. Brooks noted that "radiographs of the cervical spine are unremarkable."  He injected plaintiff's left shoulder.  (R. 290).  In February, plaintiff complained of increasing neck pain.  Dr. Brooks ordered a cervical spine MRI.  In March 2007, plaintiff "scream[ed] out" in pain when Dr. Brooks turned her neck "certain ways."  However, he observed that plaintiff's cervical spine MRI showed "no significant stenosis, herniated disc, or pathologic lesion."  Dr. Brooks' impression was "[p]ossible underlying rotator cuff tear with impingement," but – as the ALJ specifically noted in his credibility determination – Dr. Brooks observed that plaintiff's "pain seems to be migratory, and her exam is not consistent."  (R. 283).

The ALJ further noted that plaintiff's "history of generally intermittent, conservative medical treatment . . . is not consistent with the degree of limitation alleged."  (R. 18).  Although plaintiff complains of debilitating back and extremity pain, her treatment has consisted primarily of medication.  For the possible rotator cuff tear, Dr. Brooks performed injections and prescribed "an aggressive Thera-Band program."  (R. 283).  Additionally, plaintiff complains of and has been diagnosed with peripheral neuropathy but – as the ALJ indicates – no treating or examining physician has noted any significant gait disturbance. (See, e.g., Exhibits 7F, 11F, 13F).[4]

---

[4]  Contrary to the Commissioner's argument, the ALJ did not rely on plaintiff's failure to quit smoking as a basis for his credibility determination. (See R. 18).

The ALJ articulated specific and adequate reasons for his credibility determination and, upon review of the record as a whole, the court concludes that those reasons are supported by substantial evidence.

### State Agency Medical Consultant's Opinion

Plaintiff's next allegation of error is that the ALJ gave "a lot of weight to the opinion of the state agency medical consultant[] . . . who was not a treating source[.]" (Plaintiff's brief, p. 5).   Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review."   The Ruling provides that the medical opinions of such consultants must be considered, and indicates that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."   The opinions of non-examining medical sources, "*when contrary to those of examining [sources]*, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence."   <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir. 1987)(emphasis added).   However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.   <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584-85 (11th Cir. 1991).

The ALJ relied, in part, on the state agency medical consultant's opinion "that the

9

claimant is capable of performing a full range of medium work with no exposure to environmental pollutants."  (R. 18; see Exhibit 10F).[5]  As the ALJ expressly noted, "[n]o treating or examining physician has reported any specific limitations."  (R. 18).  Because no examining source has expressed an opinion regarding plaintiff's functional limitations, the ALJ did not err by crediting the expert opinion of the non-examining medical consultant.

## Hypothetical Question to Vocational Expert

Plaintiff argues that "[t]he hypothetical person as described by the ALJ [to the vocational expert] was not a person[] as claimant testified to being and as the records suggest, and as such, the ALJ erred as a matter of law in denying [plaintiff's] claim based on this hypothetical."  (Plaintiff's brief, p. 6).  Plaintiff contends that the ALJ should have relied on the vocational expert's testimony that no jobs would be available for a hypothetical person described by the ALJ who had the added limitation that she "could not be on her feet for over three to five minutes."  (Id.).

For a vocational expert's testimony on the availability of jobs to constitute substantial evidence, "the ALJ must pose a hypothetical that adequately describes all the claimant's impairments and accurately reflects the claimant's educational level, age, work skills, and experience."  Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314-15 (11th Cir. 2007)(citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).  However, the hypothetical question "need only include limitations supported by the record" and a

---

[5]  The ALJ did not rely exclusively on this evidence, as he determined that plaintiff "has the residual functional capacity to perform light work with mild to moderate postural limitations, and avoiding exposure to fumes, extreme temperature, hazards, and heights."  (R. 16).

claimant's "additional claimed impairments that [are] not supported by objective medical evidence" need not be included in the hypothetical.  Lanier, 252 Fed. Appx. at 315. No physician or other medical source has suggested that plaintiff cannot stand for more than three to five minutes; the only evidence of this limitation is plaintiff's own testimony.  As discussed above, the ALJ properly discredited plaintiff's testimony regarding the extent of her symptoms.  The ALJ did not err by failing to include this limitation in his hypothetical to the vocational expert, or by basing his finding regarding the availability of jobs on the VE's response to his question, as opposed to the VE's response to the question posed by plaintiff's counsel.

## New Evidence

Plaintiff has attached medical evidence to her brief.  These additional records document plaintiff's overnight hospitalization on September 10, 2007 for a cardiac catheterization and renal artery angioplasty.  Plaintiff reported chest pain.  She had previously undergone right renal artery stenting for renal artery stenosis.  Her physician performed a cardiac catheterization to evaluate her for coronary artery disease; the test revealed normal coronary arteries and normal ventricular function.  Because of plaintiff's hypertension and history of renal artery stenosis, the cardiologist performed an abdominal aortogram.  Based on the result, he referred her for angioplasty.  A radiologist found that plaintiff's previously stented right renal artery demonstrated a "recurrent in-stent stenosis of 60%."  He performed a balloon angioplasty and noted a good result.  (Attachments to Doc. # 11).

To demonstrate that remand is appropriate on the basis of this evidence, plaintiff must show that: "'(1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level.'" Vega v. Commissioner of Social Security, 265 F.3d 1214, 1218 (11th Cir. 2001); see also Ingram v. Commissioner of Social Sec. Admin. 496 F.3d 1253, 1267 (11th Cir. 2007)("A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court."). Plaintiff's hospitalization occurred after the Appeals Council denied review in this case. The court concludes that the evidence is new and noncumulative, and that there is good cause for plaintiff's failure to submit the evidence during administrative processing. Thus, the court must determine whether the evidence is "material." Plaintiff fails to address the significance of the new evidence in her brief before this court, noting only – in a single sentence – that the attached medical records "show since the date of the hearing and her appeal to this court [plaintiff] has undergone a heart cath[et]erization at Southeast Alabama Medical Center and balloon angioplasty due to blood pressure of 190/90 and the inability of getting her pressure down on multiple agents." (Doc. # 11, p. 4).

The ALJ was aware of plaintiff's history of renal artery stenosis and discussed it in his opinion. (R. 16). In November 2004, plaintiff's physician, Dr. Centafont, performed a cardiac catheterization and abdominal aortograph. He found normal coronary arteries and

normal ventricular function.  He noted that "[t]he right renal artery again has previously been stented.   Upon selective renal arteriography we note approximately 50 to 70% ostial stenosis."  He conferred with Dr. Veale, who felt that "no intervention was indicated."  Dr. Centafont determined, at that time, that the restenosis of the right renal artery stent was "[n]oncritical" and that plaintiff was then at "minimal risk from a cardiovascular perspective."  (R. 130-31).  The ALJ noted this finding.  (R. 16).

In his discharge summary for plaintiff's September 2007 hospitalization, Dr. Centafont indicates that he believed plaintiff's chest pain to be secondary to her poorly controlled hypertension and the hypertension to be secondary to the renal artery stenosis.  He noted that Dr. Lund, the radiologist, stated that he had a good result with the balloon angioplasty.  Dr. Centafont states that plaintiff's pressure is "under better control."  The new evidence indicates that plaintiff's renal artery stenosis had progressed to a point at which her physician felt that intervention was warranted.  However, the new medical records indicate a good result from angioplasty and do not suggest that plaintiff was more limited than found by the ALJ.  There is no reasonable probability that the additional evidence would change the administrative result and, accordingly, the new evidence is not material so as to warrant a sentence six remand.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate judgment will be entered.

Done, this 31st day of March, 2009.


/s/ Susan Russ Walker

SUSAN RUSS WALKER

CHIEF UNITED STATES MAGISTRATE JUDGE